# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **THE ESTATE OF WARREN** | ) | **CASE NO. 1:13CV00423** |
| **V. COLBERT JR., et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | <u>**OPINION AND ORDER**</u> |
| | ) | |
| **THE PRUDENTIAL INS. CO.** | ) | |
| **OF AMERICA,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**CHRISTOPHER A. BOYKO, J.**</u>:

     This matter comes before the Court on Defendant The Prudential Insurance Company of America's (hereinafter "Defendant Prudential") Motion (ECF DKT # 7) to Dismiss Pursuant to FRCP 12(B)(6). Defendant Prudential asserts that Plaintiff Estate of Warren V. Colbert's (hereinafter "Plaintiff") claims are preempted by ERISA. Defendant Prudential's Motion is granted in part and denied in part.

# I.  BACKGROUND

According to Plaintiff's Complaint, Warren Colbert ("Colbert") had a group life insurance policy, paid for by his employer, that was terminated on April 1, 2010. (ECF DKT # 1, Exhibit A at ¶¶ 6-7).  On or about April 8, 2010, Colbert was notified by Prudential that his group life insurance policy was terminated. (ECF DKT # 1, Exhibit A at ¶ 7).  Plaintiff alleges that Prudential then made Colbert an offer to convert his former policy into a new and separate "Prudential Individual Life Insurance Policy" which was to be paid for solely by Colbert. (ECF DKT #1, Exhibit A at ¶ 8).  The April 8, 2010 letter also notified Colbert that he must contact Prudential within 31 days of termination of coverage or 15 days from the date of the letter. (ECF DKT # 1, Exhibit A at ¶ 8).

Allegedly, after contacting Prudential, Colbert learned the amount of the monthly premium payment for the new policy and sent "conversion documents" and a check for the first month's payment to Prudential on May 7, 2010.  One day later, on May 8, 2010, Colbert passed away. (ECF DKT # 1, Exhibit A at ¶ 16).

In a letter dated May 17, 2010, Prudential acknowledged that Colbert had contacted Prudential at some time to inquire about the conversion process. (ECF DKT # 1, Exhibit A at ¶ 11).  The May 17 letter also stated in part that Colbert's conversion right would expire 92 days from April 1, 2010, and that Colbert would have until June 1, 2010, to return the conversion application and payment to convert his policy. (ECF DKT # 1, Exhibit A at ¶¶ 13-14).  Plaintiff asserts that Colbert had complied as instructed because the conversion application and first month's payment had been sent on May 7, 2010, well before the June 1, 2010 deadline. (ECF DKT # 1, Exhibit A at ¶ 18).

In a letter dated June 4, 2010, Prudential informed Plaintiff that because they had not received the conversion forms in time, they had denied Colbert his right to convert to the new policy. (ECF DKT # 1, Exhibit A at ¶ 19).  Further, Plaintiff alleges that when Prudential sent the check back, Prudential knew that Colbert had passed away on May 8, 2010. (ECF DKT # 1, Exhibit A at ¶¶ 20-21).

On January 15, 2013, Plaintiff filed a Complaint in the Cuyahoga County Court of Common Pleas, alleging Breach of Contract, Promissory Estoppel, Negligent Misrepresentation, Bad Faith, and Bad Faith for Failure to Investigate against Defendant Prudential. (ECF DKT # 1, Exhibit A at pp. 4-5).  On February 27, 2013, Defendant Prudential filed its Notice of Removal with the Court. (ECF DKT #1).

## II.  LAW AND ANALYSIS

### A.  Legal Standard

In deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must accept as true all factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  The court need not, however, accept conclusions of law as true:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  As the Court held in [*Bell Atlantic v.*] *Twombly*, 550 U.S. 544, 127 S.Ct. 1955 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-Defendant-unlawfully-harmed-me accusation. *Id*. at 555.  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*. at 557.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct

alleged. *Id*. at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a Defendant has acted unlawfully. *Id.*  Where a complaint pleads facts that are "merely consistent with" a Defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. at 557.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

According to the Sixth Circuit, the standard described in *Twombly* and *Iqbal* "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir.2007) (quoting *Iqbal v. Hasty*, 490F.3d 143, 157-58 (2nd Cir.2007)).

The Court should disregard conclusory allegations, including legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555; *J & J Sports Prods. V. Kennedy*, No.1:10CV2740, 2011 U.S. Dist. LEXIS 154644, *4 (N.D.Ohio Nov. 3, 2011).

## B.  Plaintiff's Claims and ERISA Preemption

The threshold inquiry is whether Colbert's group life insurance coverage, which he sought to convert, is governed by ERISA.  Given the language in Plaintiff's Complaint and the subsequent briefs filed by both parties, no one disputes that Colbert's group life insurance coverage, sponsored by his former employer, CIT Group, was an employee welfare benefit plan governed by ERISA. (ECF DKT # 1, Exhibit A at ¶ 7).  In Plaintiff's Opposition to Defendant's Motion to Dismiss, the Plaintiff affirms this fact, stating that, "the former ERISA governed life insurance policy was converted . . . ." (ECF # 11, p. 6).  However, Plaintiff argues that his state common-law claims are based, not on his previous ERISA group plan, but rather, on a converted individual policy. (ECF DKT # 1, Exhibit A at ¶ 22).  According to Plaintiff, because a conversion took place and the newly converted  individual policy is not

-4-

governed by ERISA, the state common-law claims against Defendant are not preempted.

Although the Court views the  facts alleged by Plaintiff in the most favorable light, the Court cannot summarily accept the conclusion that a conversion took place and a new individual policy was actually in force. *See Weaver v. Prudential Ins. Co. of America*, 763 F.Supp.2d 930, 939 (M.D.Tenn. 2010) (stating that "[t]he question of whether Plaintiff's [actions] effected a conversion of her policy from a Group Plan to an individual contract is a question of law, not fact.").  Because Colbert allegedly complied with all the terms Defendant required of him, Plaintiff contends that a conversion occurred immediately upon Defendant receiving the conversion application and the check for the first month's payment.  However, Plaintiff failed to provide any of the letters sent by Prudential cited in Plaintiff's filings, as well as any documentation that a new individual policy existed.

Further, the language in Plaintiff's Complaint indicates that a new individual policy was never formed.  Paragraph 18 of Plaintiff's Complaint states that "[u]pon Prudential's receipt of these items, Warren's policy *should have been converted . . . .*" (ECF DKT # 1 at ¶ 18) (emphasis added).  Additionally, paragraph 19 alleges that "Prudential *improperly denied Warren's right to convert . . . .*" (ECF DKT # 1 at ¶ 19) (emphasis added).  This language illuminates the fact that a new individual policy was never actually created, because Plaintiff's claims allege that Prudential should have converted Colbert's group policy and did not because they improperly denied Colbert's right to convert.

Because a new plan was never actually created, Defendant contends that the real question in this case is "whether Colbert properly and timely converted his group insurance plan into an individual policy." (ECF DKT # 7 at ¶ 6).  The Tennessee Court in *Weaver* found

that "[t]he question of whether conversion has actually occurred is governed by ERISA." 763 F.Supp.2d at 936.  Adopting the *Weaver* Court's rationale, the Court agrees with Defendant and finds that the issue here is governed by ERISA.

Although this case is governed by ERISA, the Court must still determine the appropriate type of ERISA preemption applicable to each of Plaintiff's claims.  "ERISA can preempt state-law claims in two ways: complete preemption under 29 U.S.C. § 1132(a) and express preemption under 29 U.S.C. § 1144." *Loffredo v. Daimler AG*, 500 Fed.Appx. 491, 500 (6th Cir. 2012) (Moore, J., concurring).  "[A] completely preempted state-law claim arises under federal law and thus vests the district court with federal-question jurisdiction." *Id*. (internal quotation marks omitted).  A claim is completely preempted if the Plaintiff "could have brought his claim under ERISA and there is no other independent legal duty implicated by a defendant's actions." *Id*. (internal quotation marks omitted).  "By contrast, express preemption . . . is grounds for dismissal, but not for removal." *Id*.  Claims that attempt to create "alternate enforcement mechanisms" are expressly preempted under ERISA. *Id.* at 501.

Applying the distinction between complete and express preemption to this case, the Court finds that Plaintiff's claim of Breach of Contract is completely preempted, because Plaintiff could have brought the claim under ERISA as a denial of benefits claim pursuant to 29 U.S.C. § 1132.  Conversely, Plaintiff's claims of Promissory Estoppel, Negligent Misrepresentation, Bad Faith, and Bad Faith for Failure to Investigate are expressly preempted by ERISA because they seek the same relief that the Breach of Contract claim seeks through alternate enforcement mechanisms. (ECF DKT # 1, p. 4-7).  Those claims are,

in effect, subsumed by Plaintiff's Breach of Contract claim and thus, expressly preempted and dismissed.

When a Plaintiff's claim is completely preempted, he has the opportunity to amend his federal complaint to re-plead the claim to conform with ERISA. *Loffredo*, 500 Fed.Appx. at 500.  Accordingly, the Court grants Plaintiff leave to amend the Complaint for Count I to conform with ERISA, by November 22, 2013.

### III.  CONCLUSION

For these reasons, Defendant's Motion to Dismiss Pursuant to FRCP (12)(B)(6) is denied for Count I and granted for Counts II, III, IV, and V.

**IT IS SO ORDERED.**

<u>s/ Christopher A. Boyko</u>
**CHRISTOPHER A. BOYKO**
**United States District Judge**

**Dated: November 14, 2013**